Tilghman C. J.
John Proctor sold to his son-in-law, Andrew Mitchell, 100 acres, part of a tract of land which had not been patented or surveyed, but to the right of pre-emp *83 tion of which the said Proctor was entitled according to the laws of Pennsylvania. The purchase money was 60/., of which Mitchell paid Proctor 91. and entered into possession. He erected a house, cleared and improved a few acres of land, and lived on the premises until the time of his death, which was about a year from the making of the purchase. On the 4th February, 1784, (the day before MitchelPs death,) he made his will, by which he devised the premises to his wife Mary, the daughter of the said Proctor, for life, with remainder to his only child Elizabeth, wife of Thomas Patton, then about a year old, in fee, and made his wife and father-in-law Proctor, his executors. Proctor was the acting executor, and it appears by his administration account, settled 2d February, 1791, that a balance of more than 100/. was due from him exclusive of the third part, which belonged to the widow. He also received the rents of other lands devised by Mitchell to his daughter Elizabeth, from the time of his death till the year 1791, when the Orphan’s Court appointed a guardian, on which account he was considerably indebted to the said Elizabeth. On the 23d April, 1784, Proctor conveyed the land which he had sold to Mitchell, to his own daughter the widow of Mitchell, in fee. She married George Smith, the defendant, in 1785, who afterwards procured a return of survey of the said 100 acres to be made in his own name, although it had been surveyed for Mitchell in his life-time, by consent of Proctor, of which the deputy surveyor of the district gave notice to the said Smith previous to his procuring the return of survey as aforesaid. Two questions are submitted to the Court: 1st. Whether the plaintiffs are barred of their recovery by virtue of the act for prevention of frauds and perjuries, passed 21st March, 1772? 2d. Whether in case the plaintiffs are not barred by that act, a previous tender of the purchase money due from Mitchell to Proctor, was not necessary in order to support this ejectment ?
. 1. Although .the act for the prevention of frauds and perjuries declares, that no estate greater than a lease at will shall pass without a written contract, yet it has been repeatedly decided, that no man shall convert into an instrument of fraud that law, which was made for the purpose of preventing fraud. No man shall reap the fruits of a contract for the sale of land, and afterwards annul the contract; he shall *84 not permit the contract to be executed in part, and then refuse to execute it in whole. There may be some difference °^" °pini°n, whether the payment of a very small part of the purchase money, unaccompanied by any other circumstance, be such a part performance, as would induce a Court of Chancery to decree a specific performance ; but there can be no doubt in a case like the present, where there was not only a payment of money, but a survey, a taking of possession, a residence, a clearing of land and building of a house by the purchaser. I refer to the cfises cited by Mr. Smith in his edition of the Laws, vol. 1. p. 391 to 397, and will only add, that I consider the law as too well settled to admit of a question. The counsel for the plaintiff in error, treated this as an agreement by Proctor to settle the land on his daughter on her marriage, and in that case he contended, that chancery >vould not compel a specific performance, by which the land might eventually be carried to another family. As to that, it is sufficient to say, that the Court cannot suppose any facts not stated on the record, and the case on the record is not a marriage settlement, but a sale by Proctor to Mitchell. But even if the father had given the land to his son-in-law, at less than its value, with a view of promoting the marriage of his daughter, and it were proper to consider now what would be equitable under the.se circumstances, I should say, that the son-in-law having paid at least part of the value, the estate ought to be so settled, as to be secured after the death of the parents to the issue of the daughter by that marriage, that is to say, to the lessors of the plaintiff..
2. It is a general rule, that where a contract has been made for the purchase of land, the purchaser shall not recover possession, till he has paid or tendered the purchase money. Whether this must be done previous to the commencement of the' ejectment, or the Court may so protect the seller by ordering a stay of execution, fkc. as may render a previous tender unnecessary, we need not now decide, because it appears, that Proctor had received more than the amount of the purchase money long before the suit was commenced. He was the executor of Mitchell, as such he had a right to retain the amount of his debt, and he has retained it, as appears by his administration account. What renders this matter more clear is, the declaration of Proctor to Mitchell on bis death bed, at the time of making his will, that he should *85 have plenty of effects in his hands as executor, to satisfy the debt, and that he would execute a deed in conformity to the will, which Mitchell was about to make. The counsel for the plaintiff m error, introduced a third point, viz. that a tender ought to have been made to Smith of the money paid in the land-office on the return of survey, in order to obtain title from the commonwealth. If this point were open I should wish to be satisfied, whether Smith meant to secure the title to the daughter of Mitchell according to her father’s will, or whether, with full notice of her equitable claim, he unjustly endeavoured to frustrate the contract and last will of Mitchell, and obtain the land for himself and his own children. But I forbear to enter into this consideration, because by the record no such question is submitted to us. I am of opinion, upon the whole, that the judgment should be affirmed.
Yeates J.
It is too late to inquire at this day into the propriety of our adoption of the British decisions, that agreements as to lands in part executed, are taken out of the statutes of frauds and perjuries. Statutes made to prevent frauds were not designed to protect them. Wanting a Court of Chancery, we have admitted its rules in certain cases to prevent an absolute failure of justice, although we differ in the mode of relief. A system has thus grown to maturity, established by repeated decisions, and recognised by the constitution, as to the chancery powers usually exercised in the courts of law. It is not correct to assert, that in many of these cases justice is administered by halves. Several instances have occurred within my knowledge, where the courts have refused to execute agreements specifically, on the ground of not having it in their power to do complete equity between the parties. The discretion of the chancellor is devolved on the judges, and is exercised through the instrumentality of the jurors.
It cannot be asserted that a court of equity would not interpose, and grant relief on a bill filed by the lessors of thó plaintiff below, under all the circumstances of the case. Here has been a parol agreement, wherein fohn Proctor, confessedly the owner of the whole tract of land, agreed with Andrew Mitchell, his son-in-law, to sell him 100 acres,, part thereof, for 60/., which were surveyed and marked off by the district surveyor, at the instance of both parties. Mitchell *86 pays 91. in part of the purchase money, and in pursuance of the contract receives peaceable possession of the part sold to builds a cabin, wherein he resides with his family until his death, clears and fences fields, and plants fruit trees. Upon his death bed, his will is drawn up and read to him, and anxious for the interests of his child, he inquires of Proctor, his father-in-law, whether his not having obtained a conveyance could make any odds. Proctor answers in the negative, and that Mitchell having plenty of property to pay him the sum of money remaining due, he would execute the conveyance according to the provisions of his will. He executes his will, making his widow and father-in-law his executors, and dies on the next day, without any other debts than the 51/. due on the sale of the 100 acres. Upon this state of facts, I have no doubt, that the act of assembly of 21st March, 1772, is no bar to the present action, instituted by the daughter of Mitchell and her husband, after the death of his wife.
The only remaining question on the record is, whether a previous tender of the balance due to Proctor on the sale of the land was requisite to support the ejectment ?
It appears that Proctor settled his administration account on the 2d February, 1791, and that a balance of 105/. 16s. 3id. remained in his hands, exclusive of his daughter’s third part of the personal estate, under the will of her first husband. On this part of the property Proctor relied for payment, and the funds were adequate for this purpose, which he might well retain. He has made no claim for this balance. He was moreover indebted to his grandchild in 130/. for rents received on another place belonging to her father, and thus fell considerably in her debt, after receiving his 51/. and interest. Independently hereof, should a tender be made to Proctor after he had conveyed the 100 acres to his daughter Mary, during her widowhood, shortly after the death of her husband ? And why should this balance be paid to the plaintiff in error, who intermarried with the widow ? Proctor denied on oath, that he received any money from Smith on account of these 100 acres. But if it really had been so paid, it was not on account of his step-daughter, or as her trustee. Smith Claimed the land adversely to her interests, asserting, as the deed expresses it, that the lands were improved by Mrs. Mitchell during the short, period of her widowhood. But the *87 wife of Smith, under whom he claims, as tenant by the courtesy, well knew that the contract of her father was made with Mitchell her first husband, that he had built the cabin, made the other improvements, and undertaken to devise it. ■ The interest therefore of Smith,which grew out of the supposed estate of his wife, was visited by her knowledge of these facts ; she never could be considered as an innocent purchaser without notice. It is moreover stated, that shortly after the death of her first husband, she removed from the premises in question to her father’s house, and there continued about one year, until her intermarriage with Smith, when they returned to these lands. He could not, therefore, but know, that the cabin which he raised higher, and the improved fields which he cultivated, were not the result of her labours during her widowhood ,• and besides, the survey made for Mitchell was communicated to him by the district surveyor, so that it appears there was not only constructive, but actual notice of the right of tiie infant child, to the plaintiff in error. Upon the whole, X conceive this to be such a case, as a chancellor would not hesitate to decree a specific execution of the original contract, in favour of the defendants in error, and would not refer them to a compensation in damages for the breach thereof.
I am of opinion, that the judgment of the Court of Common Pleas of Westmoreland county be affirmed.
Brackenridge J. concurred.
Judgment affirmed.