BARKLEY TOWNSEND, app't., deft. below *vs.* ROBERT HOUS-
TON, appellee, comp't. below.

Payment of a substantial part of the purchase money is such a part performance of a
parol agreement for the sale of land as will take the case out of the statute of
frauds; and a court of equity will decree a specific execution of the agreement.
The payment must be clearly made and accepted in execution of the agreement.

APPEAL from chancery.  Sussex.

This was a suit for the specific performance of a parol agreement
to sell land.

The complainant in his bill stated, that Thomas Townsend, deft.'s
father, having died intestate, his lands were appraised in the orphans'
court, and stood for acceptance.   That in February, 1832, it was
agreed between him and complainant, that complainant should join
him, the said Barkley Townsend, in the acceptance of said lands,
and that the said Barkley would sell and convey to complainant one
half of the same for $3750, to be paid as follows: complainant was to
deliver and sell to deft. one half of the schooner Tanner and one half
of a scow, for $625, and to pay one half of a debt due from the
estate of the said Thomas Townsend to the Farmers' Bank, amount-
ing to $2155, and to pay deft. in cash, on the execution of the deed
for the one half of said land, the sum of $1547 50.   The complain-
ant alledged performance of this agreement in part, and tender as to
the residue.   That he had paid Townsend $800 and $600, and took
from him certain receipts which were signed by Townsend as vouch-
ers or memoranda in writing of the agreement; that complainant has
also sold and delivered to deft. one half of the said schooner and
scow; being the sum of $2025, paid in part performance of said
agreement; and that he has tendered the residue of the purchase
money.   He therefore prays a specific execution, &c.

The deft. pleaded as to part, the "act about contracts and assump-
tions," and answered as to the residue that he the deft. having ac-
cepted the lands afsd. the complainant applied to him and offered to
purchase an interest in the same, and stating that he would give a
fair price; but that no sale or agreement was ever made.  That while
they were in treaty he did agree to take a part of the vessel and scow
provided they should finally bargain, and did receive the said two
sums of $800 and $600, but the same were not paid in part perfor-

mance of any agreement for the sale of said lands, for no such agreement was ever made, as the parties could never agree as to the terms of the sale or the amount of the interest which the said complainant was to take in said lands.    Deft. admitted the endorsement of a note by complainant to the Farmers' Bank for $2155, but the said note was paid off by the drawer and the endorser discharged.  He denied the receipt of said vessel and scow; the execution of any paper, or the performance of any act, in part execution of any agreement for the sale of said lands, totally denying the making of such agreement.

The receipts referred to in the bill and answer, were in the following words:

"Received March 10, 1832, of Robert Houston, eight hundred dollars, which is in part pay of the half of the mill property, &c. in Middleford, which I promise to deed when called on.
(Signed)     "BARKLEY TOWNSEND."

Received April 17, 1832, of Robert Houston, six hundred dollars in part pay of the one half of the Middleford property, which I have sold to him.—$600.
(Signed)     "BARKLEY TOWNSEND."

The complainant put in a general replication of insufficiency, &c. to the deft.'s plea of the "act about contracts and assumptions," and a special replication of the above receipts as sufficient notes or memorandums in writing to take the case out of the act.    The special replication was afterwards stricken out by order of the chancellor, and the plea set down for hearing; and, after hearing, the chancellor decreed that the plea be overruled and that the same should stand for an answer, and the benefit of the same be reserved to the deft.  On the general hearing of the cause the chancellor decreed that the deft. Barkley Townsend should account for one half of the rents and profits of the lands of Thomas Townsend, deceased, which were assigned to the deft. in the orphans' court, from the 10th March, 1832, to the 13th of March, 1835, the date of the decree; with liberty to except to said account, and a general reservation of equity.    Whereupon an appeal was prayed and granted.

*Bayard,* for the appellant.    The chancellor erred in over-ruling the plea of the statute and in directing an account.    The case embraces two general questions; First, whether an agreement has been proved that does not come within the statute of frauds; or, Second, whether there has been such a part performance of a parol agreement as will take it out of the statute.    And to these may be added a third, whether the terms of the agreement are established with sufficient certainty to found a decree upon.    First: Is there any memorandum of the agreement, or note in writing, such as will prevent the statute from applying?  Where the writing is relied on it must contain within itself all the terms of the agreement; it must be sufficient without reference to other proof.  *Sugd. Vend.* 53; *2 Prec. Ch'y. Seagood vs. Meale; 12 Vezey, Jr.* 466, *Blagden* vs. *Blagden.*   An agreement not specifying the price held insufficient.    The receipts in this case do not specify the price; nor distinctly point out the property sold.   What constituted the "Middleford property" is matter of extraneous proof; and the receipts are entirely indefinite as to the quan-

tity of interest sold. 2 *Swanston* 257. One term of the agreement being omitted, a specific performance was refused. 2 *Hovenden on Frauds* 8; 1 *Ves. and Beam.* 524; *Clows* vs. *Higginson,* 13 *Johns. Rep.* 300. All the objects of the statute would be thwarted by admitting parol evidence to establish the terms of an agreement not sufficient in itself to show the contract of the parties. Second: If the court cannot enforce this as a written agreement not falling within the statute of frauds, does the bill alledge such acts of part performance of a parol agreement as will take it out of the stat. For if the part performance be not alledged no proof of it can now be considered as we are now considering the validity of the plea to the bill; and, of course, trying the case on bill and plea. What is alledged in the bill as a part performance? payment of a part of the purchase money in cash and the delivery of one half of a schooner at a certain valuation. This brings up the question whether payment of part of purchase money is a part performance of a parol agreement for the sale of lands such as will avoid the statute of frauds and authorize a decree for a specific performance. I am aware that there are *dicta* in the books which support the affirmative of this question,. but the decisions are against it. The question is new in this state; there is but one case in the English courts in modern times where the point has been decided, though there are many ancient ones. We are then not bound by authority but may look into the principle on which this doctrine of part performance arises to see what is the policy of our courts in relation to it. The English judges have doubted the propriety of its introduction there; and think the cases have gone too far already. *(1 Mad. Ch'y.* 379. 7; 6 *Vezey* 32.*)* It is a stretch of the equitable power of chancery in avoidance of positive law. It is based on the principle of avoiding obvious fraud, as where under a parol agreement the vendee enters into possession and improves the property; but, except in such cases, it would be better to adhere to the written law and require all agreements for the sale of lands to be in writing than on loose considerations of equity to open the door to litigation and increase temptations to fraud and perjury. In a case of obvious fraud the court ought, on its own principles, to afford relief; but, wherever compensation can be awarded to the party in any other way, it ought not to enforce a defective agreement by decreeing its specific execution. The complainant comes into court a defaulter; having neglected to provide himself with a legal right to a conveyance, he is entitled only to the protection of the court against fraud, but not to its aid in compelling a conveyance. If he has paid a part of the purchase money he may recover it back at law and can't be injured; and there is no occasion for the equitable interference of this court. The failure of the purchase and consequent injury is not the principle on which the court acts; for this would be an entire repeal of the statute, but relief is granted on the ground of fraud—where the party who has partly performed the agreement cannot be remunerated and would be defrauded unless a specific execution of the agreement is had. *Sugd. Vend.* 77, 82-7, 90; 2 *Hov. Frauds* 3, 4; 1 *Mad. Ch'y.* 379; 1 *Sch. & Lef.* 22, 33 *to* 40; 6 *Vezey* 32. Third: I assume that if the proof establish a different agreement from that presented in the

bill the complainant cannot have relief *on that bill.* The party must prove his contract as he states it; and this being an application to the extraordinary jurisdiction of the court, against the express provisions of the statute law, the complainant will be held to prove his contract precisely, or will be left to his legal remedy. 2 *Hov. Frauds* 4, *note* 2, 6; 5 *Vezey* 457; 6 *do.* 554; 1 *Mad. Ch'y.* 384-5; 2 *Sch. & Lef.* 7; 2 *Wheaton* 341. The bill alledges the agreement to have been that Houston should *join* Townsend in the acceptance of the land in the orphans' court. The proof is that Townsend alone accepted and Houston became surety in the recognizance. The agreement was for the *residue* of Thomas Townsend's lands, &c.— the proof is concerning a sale of the "Middleford property," &c. of Thomas Townsend, and it does not appear from the agreement that this Middleford property was all the residue. And there is also a discrepancy in relation to the price; if indeed the proof establishes any price as having been agreed on, which is denied.

*Frame,* for appellee, complainant below. This is a bill for the specific performance of a parol agreement for the sale of land. The "act about contracts and assumptions" being our statute of frauds and perjuries is set up as a bar to the complainant's suit; but the bill sets up sundry acts of part performance as taking the case out of that statute. There is no doubt that equity will extend its aid against the express provisions of the statute; and, to prevent fraud, will compel a specific performance of an agreement void by the statute. Nor is there any doubt that cases of part performance are within the aid of a court of equity on the same principle. 2 *Hov. Frauds* 1, 2; 1 *Fonbl.* 181-2-5; 1 *Mad. Ch'y.* 377. First: The first question then is whether the acts alledged in this bill do come up to what is considered a part performance of the contract. And here I pass by the first branch of Mr. Bayard's argument and his authorities on that subject, because it is not pretended that the receipts in this case amount to such a note or memorandum of a contract as to entitle us to a decree on the footing of an agreement in writing. The contract is a parol contract, and we go for its execution, because it has been partly performed on our part, and it would be against equity for the deft. now to refuse to execute it on his part. The receipts are not relied on as constituting a written agreement, but will be used only as the evidence of a parol agreement and of its performance in part. The principle on which a court of equity decrees a specific performance in these cases, is the prevention of fraud. Fraud is a principal subject of equity jurisdiction inherent in the court. The statute was enacted not to countenance or to affect fraud but to prevent it. Hence where the statute is set up as a cover to fraud, and will be the means of doing injustice, as where a party having derived all the benefit from a contract seeks to avoid its obligations by a plea of the statute, equity will, notwithstanding the statute, compel him to execute his contract and do justice. Again: Cases of part performance are regarded as not falling within the statute, because thay are without its mischief, which was the tendency to perjury. Part performance consists of acts which themselves establish the agreement and the evidence of it does not lie in words, but it is proved by the acts of the parties. The danger of establishing parol agreements by false

swearing is therefore avoided. 1 *Fonb.* 181, &c.; *Sugd. Vend.* 83, 86; 1 *Mad. Ch'y.* 377; 1 *Swanst.* 181; 7 *Vezey, jr.* 346; 1 *Binn.* 218; *Reeve's Dom. Rel.* 399, 340; *Powel, Cont.* 291, &c.; 1 *Chitty Dig.* 60.

I now proceed to the question, whether payment of purchase money is such a part performance of a parol agreement for the sale of lands as will entitle the purchaser to a decree for a specific execution of the contract; and I contend that a payment evidenced as this is, by the written receipts of the deft. and not depending on mere parol proof, is such a part performance both on principle and authority. Lord Hardwick in *Lacon* vs. *Mertyns* (*3 Atkyns* 1) has in my opinion settled the question so far as the authority of his great name can settle it. *Sugden* calls this a dictum of Hardwick, but it is not so. The point was decided and was necessary to the decision *Lacon* vs. *Mertyns.* And the authority of that case is recognized in *Buckmaster* vs. *Harrop,* 7 *Vezey* 346; and by Mr. Roberts in his treatise on *Frauds,* 142-3-4. The next case was by Lord Chancellor Roslyn, which, if not a decision is a strong recognition of the principle. 4 *Vezey* 720, *Mayne* vs. *Melvin,* distinguishes between the payment of earnest and a payment of part of the purchase money. 3 *Vezey, Jr.* 39. The relief is not confined to cases where the party cannot be restored; but extends to all cases where there has been an unequivocal act of part performance, as giving possession, accepting a considerable part of purchase money, &c. *Freeman's Rep.* 281 (*486;*) *Skett* vs. *Whitmore,* in Lord Nottingham's time it was decided that where purchase money was paid the court would decree a specific execution. 1 *Bac. Ab.* 74, *Tit. Agreement C.* (120,) distinctly recognizes the payment of purchase money as a part performance, but says the doubt is as to what shall be deemed proof of this payment. If the deft. deny that the money was received in part performance, the proof should be by some written admission that it was in part execution. This proof is supplied in the present case by the two receipts distinctly referring to the agreement. The same principle is sustained by 1 *Powell on Cont.* 307; 2 *Caine's cases in Error* 109; 1 *Peters' Cir. Ct. Rep.* 388; and *Roberts on Frauds* 153. It is true that Roberts in his preface, after having seen the case of *Clynan* vs. *Cook,* decided by Lord Redesdale (*1 Sch. and Lefroy* 22,) in some degree retracts the opinion given in the text. This is the great case which has thrown doubt over the principle. Before it all the elementary writers regarded the principle as settled. Now the first remark I have to make on this case is that it did not necessarily present the question, and the opinion of the chancellor though expressed on the point was not a judgment of the court The case was decided on other grounds. I agree that the question was raised; but it was poorly discussed and no authorities were cited. It was the case of a written agreement; sought to be enforced as such; the party failed to show a sufficient memorandum in writing and of course failed in his cause. He was defeated not merely because of the statute of frauds, but on principles of common law that parol evidence cannot be admitted to explain a writing. It was moreover, a part of the contract in that case that the purchase money should be paid back with interest in case the bargain failed. The chancellor-

does not notice the cases though he uses the broad expression, in direct contradiction of Lord Hardwick, that it has never been considered that payment of money was a part performance.    And he cites *Seagrave* vs. *Meale (2 Prec. Chy.)* as a leading case on the subject.    Now *Seagrave* vs. *Meale* was a case of *earnest* and not on this subject at all. *(4 Vezey, Jr.* 720.*)* There is a manifest distinction between payment of a sum down as earnest to bind the bargain, and a payment of a substantial part of the purchase-money in execution of the contract.    But the distinction does not depend so much on the amount of the payment as upon its *character* whether as earnest or in part execution.    The cases cited on the other side are of the former class.    2 *Eq. cases abridged* 46; *Lord Pengal* vs. *Ross*, was a case of earnest: *(Powell on Cont.* 306,*)* and it is moreover impeached in 4 *Vezey* 720.    On a review of the cases on both sides, I consider myself warranted in saying that, on authority, the payment of a substantial part of the purchase money is such an act of part performance as will take the case out of the statute, especially when such payment is evidenced by writing, and is unequivocally in execution of the agreement.

I shall now consider if it be so on principle.    Ordinarily speaking the payment of purchase money will be the peculiar and only act of performance that the purchaser can do.    All the other acts must be done by the vendor.    I agree that the act of part performance must be an act unequivocally referring to the agreement and in execution of it, and such an act as cannot be referred to any other object.    The importance of requiring such an act as *must* be referred to the agreement, arises from the fact that it becomes per se evidence of the agreement and avoids the danger of perjury which the statute was designed to guard against.    Is there such an act in this case?    The receipts specify that they are in part payment of purchase money and in execution of a contract of sale of the land in question.    Another ingredient in this act of part performance is that it shall place the party in such a condition that he will be defrauded if the contract be not executed.    Is not that the case here?    And is it not a stronger case than that of the mere delivery of possession which is allowed to be a sufficient part performance?    What injury arises from being put into possession?    The books say *(Powell on Cont. Roberts on Fraud* 41) by being put into possession he is made liable as a trespasser if the bargain be not completed.    Liable to whom? to the party who put him in possession and against whom he could defend himself by a plea of license.    But he would be injured by being put to the proof of his license: and would not Houston in this case be put to the proof of the contract, the payment of purchase-money and the failure of the bargain in an action of money had and received to recover his money back?    1 *Mad. Ch.* 378; *Sugd. Vend.* 83, *&c.;* 1 *Swanst.* 181; *Amb.* 586.    I agree with the other side that the mere loss of the bargain is not a ground for the court's interference; but the party must be placed in such a condition, by reason of his part performance of the agreement, as that it will be a *fraud* on him if the agreement be not fully executed.    In this case there is not only a payment of a large portion of the purchase money, acknowledged to be in execution of the contract, but the complainant has done other acts in

68

further execution of the contract which can be neither recalled nor remunerated but by completing the contract. Thus he became surety for Townsend in his recognizance in the orphans' court and incurred a liability which is not even yet removed. He also, on the faith of the contract, endorsed Townsend's note in bank for $1577 50. It is true this liability is removed; but it was done by the respondent without his consent, and with a view to invalidate the agreement. It does not therefore lie with him to set up his own wrongful act, in violation of his contract, to avoid his contract.

If the court should be of opinion that in this case the statute of frauds does not apply, and that it ought to give relief; but should doubt, on the present state of the proof, as to any of the terms of the agreement, either as to the property sold, the consideration, or any other particular; this court will, as a court of chancery would, struggle to probe the case to the bottom and prevent a fraud; and for this purpose will direct an issue, refer to a master, or take other means to get at the terms of the contract. *Sugd.* 92 *&c.*; 1 *Vezey, Sen'r.* 221; 2 *Vezey, Jr.* 243; 1 *Sch. and Lef.* 1; *Viner's Abdgl.* 523; *pl.* 4 38; 6 *Vezey, Jr.* 470-1; *Dig.* 103.

Second: A substantial proof of the contract set out in the bill will be sufficient. It need not be proved in the terms used by the solicitor in drawing the bill. A court of equity sticks not to the letter; but is satisfied by proof of substance. Thus an agreement to *join* in the acceptance of lands in the orphans' court is satisfied by proof of becoming *surety* in the recognizance on such acceptance, that being the only way in which a stranger *can join* the heir at law in the acceptance of intestate lands; and that being the evident meaning of the agreement. The property intended to be sold, and the consideration, can be clearly made out by the proof to be the same as stated in the bill: but, if it could not, the court would not dismiss the bill on that account, but would resort to means in its power of obtaining satisfactory proof on these points.

*J. M. Clayton*, in reply, for appellant. Before examining whether payment of purchase money is a sufficient part performance of a parol agreement to take it out of the statute of frauds, I shall deny that there is in this case sufficient proof of a definite agreement even by parol. It is not denied that in all the cases where a parol agreement has been executed on the ground of part performance; the agreement itself has been either admitted or fully proved. The contract must be distinctly made out, and all the acts relied on as a part performance must be referable to *the* contract and not to some contract undefined, or to any other contract than that stated and proved. The complainant will not be allowed to make experiments on the character of his proof by stating one agreement and proving a different one; keeping in view the danger of perjury which the statute was intended to avoid, and the peculiar character of bills for specific performance, he will be held strictly to the proof of whatever contract he alledges to have been made; and if he fails to establish it in all its material parts, his bill will be dismissed. The contract stated in this bill is, "that the complainant should *join* Townsend *in the acceptance of*, and that Townsend should sell and convey to complainant one half of the residue of the real estate of Thomas Townsend de-

ceased. The conversation preceding was about joining him in the acceptance; the agreement was to *join in the acceptance.* It was not a contract to become the surety of Townsend on *his* acceptance of the land. They were to be partners; both to take title under the assignment; each to bear part of the expenses. Now this contract has never been performed nor can it be performed, as the decree of the orphans' court assigning all the land to Townsend makes it impossible. Neither does the proof of the property about which the contract was made, meet the allegations of the bill. The receipts are "in part pay of the one half of the Middleford property which I have sold to him,"—and again, "in part pay of the half of the mill property &c. in Middleford;" and the testimony speaks loosely of the Townsend property. Does this answer the description of "one half of the residue of the real estate of Thomas Townsend, deceased?" What proof is there of it? And there is equal uncertainty as to the price. Second: The decree is that Barkley Townsend the respondent shall account for one half of the rents from the 10th of March, 1832, a period before he had possession of the land, or was entitled to it in any other manner than to his undivided share of his father's estate. The decree assumes a title in Houston from the 10th March, 1832, because on that day Townsend received $600 00, and agreed to make a deed *"when called for."* Now if this were a sufficient written agreement, not within the statute, he could not be entitled to the land until he called for a deed, which he did not do until February, 1833. The decree is therefore erroneous in this respect. Third: I come then to the question whether a part payment of purchase-money takes a parol agreement for the sale of land out of the statute of frauds and entitles the party to a decree for a specific execution; and I lay it down that by the law of England and of this country neither part payment nor payment of the whole of the purchase-money will take a case out of the statute. And it makes no difference that the payment is proved by writing, unless the writing itself contains a memorandum of the agreement sufficient to satisfy the statute. I take up the case relied on by Mr. Frame *(Lacon vs. Mertyns,* 3 *Atk.* 1;) and notwithstanding his sneer on Sugden, I hold that, on this subject, Sugden is an authority not inferior to Lord Hardwick himself. After reviewing all the cases he says of the case in Atkyns that it was only a dictum. Is this true? The answer admitted the contract; and it was a contract in writing; how in such a case could the question come up broadly whether part payment took a parol contract out of the statute? All the mischief against which the statute was designed to provide is avoided by the admission of the contract. The case is otherwise unsatisfactory. Atkyns is a slovenly and inacurate reporter; and so known to be. The counsel intimated that Sugden considered the point as settled until the decision of Lord Redesdale in *Clynan* vs. *Cook.* But Sugden evidently treats it as an unsettled point, and in reviewing the cases apparently leans against the doctrine; and he welcomes the decision in *Clynan* vs. *Cook,* as finally settling the law on that subject. It is remarkable that two of the greatest lawyers in existence should have been at the same time considering this question; one in England and the other in Ireland; and that both should come to the same con-

clusion. Roberts though generally a frothy writer did consider this subject as fully as he was competent to investigate any subject; and he regrets that a direct decision had not been made against the principle; and he also, after receiving the case of *Clynan* vs. *Cook* put it in his preface as settling a question which in his text he had treated of as doubtful. *Buckmaster* vs. *Harrop* (7 *Vezey* 346) is fully answered in *Clynan* vs. *Cook.* The remark referred to in *Wayne* vs. *Melden,* (4 *Vezey* 720,) was a mere *obiter dictum;* so says Sugden, *(page* 89*) Freeman,* 281, is a statement of counsel and no decision; and 4 *Vezey, Jr.* 39—*note,* is nothing but a remark of the editor. Bacon's Abridgment is of doubtful authority, and of no ·weight unless supported by references, and *Peter's Cir. Ct. Rep.* is rather against the other side. I deny therefore that the question has been considered as settled against us before the case of *Clynan* vs. *Cook;* and since that case the law has been considered by all the writers as settled the other way. I refer generally to Newland in his able review of the subject, and to Hovenden as cited before.

Suppose the court should think from the proof that there was some contract about the sale of this land but are uncertain as to its terms, will they, as suggested by the other side, send an issue? Can any case be found where, after publication of the testimony—when the parties know what each witness has sworn to and in what respect they have failed to come up to the point—after a cause is set down for hearing—heard—determined—appealed from and heard on appeal —the case has again been fully opened and the parties permitted to prove any thing they could before a jury. This would be to throw the doors wide open to perjury; and avoid all the beneficial effects of the statute of frauds. It is insisted that this contract must be executed or that Houston will be defrauded. It is said he entered into recognizance and became liable to loss. What is this responsibility? a recognizance for $7500; on which $600 has been paid and the recognizance a lien on all the property for the balance. But he endorsed also in Bank. He was relieved of that responsibility the moment he complained of it. There is then no fraud. There is nothing in the case but the payment of money which can be recovered back in an action at law.

The Chancellor *(Johns Jr.)* assigned the reasons for his decree at length.

After stating the case as before, pp. 325, &c. he proceeds:—The decision of this case appears to me to depend on that of two questions. First: Whether there has been a part performance. Second: If there has, then whether the terms of the parol contract as set forth in the bill are clearly proved. It is now settled, that equity does decide upon equitable grounds in contradiction to the positive enactment of the statute of frauds; and in cases of part performance, will admit parol testimony to prove the terms of a parol contract, relative to land. *Hovenden Tit. Spec. Per.* 1, 2. The ground of equitable interposition, is the prevention of fraud: *Vide Foxcraft,* vs. *Lister, Colles Parl .Ca.* 108; *Jeremy's Eq. Treatise,* 437; 2 *Atk.* 100; 1 *Br. Ch. Ca.* 417; 1 *Swanst.* 181; 7 *Ves.* 341; 3 *Ves.* 39-40 *and note*; *Parkhurst* vs. *Vancourtland,* 14 *Johns. Rep. on Appeal.* Whether payment of part of the purchase money is such a part per-

formance as takes the case out of the statute, appears to be an unsettled point and the desisions are contradictory. 1 *Madd.* 379; *Sugden Ven.* 81 *to* 85.     The early decisions upon the subject are, *Lord Pengal* vs. *Ross,* 2 *Eq. Ca. Ab.* 46; *Seagood* vs. *Meale, Prec. in Ch.* 560; *Luke* vs. *Morris,* 2 *Ch. Ca.* 135; these are generally cited as authorities to the point that it will not, but I would remark with respect to them, that they are adverted to in subsequent decisions as cases in which only a small sum was paid as earnest; and in 3 *Atk.* 1; 3 *Ves.* 37; 4*th Ves.* 720; it is held that part payment of the purchase-money does take the case out of the statute upon the principle of part performance.     These decisions have been objected to as extra judicial by Sugden and nothing more than dicta; he refers to one made by Lord Redesdale as conclusive; 1 *Sch. and Lef.* 41.     Upon looking into this case it appears to me, the contract was in writing, "the sum paid was in the agreement *stated to be a deposit, and interest to be paid,* if possession not delivered;" the plff. seeking a specific performance of this written contract, which was under seal, attempted to supply by parol proof one of the terms alledged to have been omitted.     It is true in this case Lord Redesdale does take up the question whether part payment is part performance; and reasoning upon the case before him and its circumstances concludes therefrom and also from the peculiar phraseology of the English stat. of frauds, that part payment of purchase-money does not take the case out of the statute of frauds; for he says, the great reason, as I think why part payment does not take such agreements out of the statute is, that the statute has said that in another case, viz: with respect to goods, it shall operate as part performance.     And the courts have *therefore* considered *this* as excluding agreements for lands, because it is to be inferred, that when the legislature said it should bind in the case of goods and were silent as to the case of lands, they meant that it should not bind in the case of lands.     As this distinction does not exist in the act of assembly about contracts and assumptions, which is the act relied on by the deft. in this case, it may be questioned whether Lord Redesdale's opinion can have any influence, especially as his reason does not apply.

So far as I have been able to trace the question in the American decisions upon the point of part payment; they accord with decisions and dicta of Lord Hardwicke and Rosslyn.     In the case of *Wetmore* vs. *White,* 2 *Caine's Ca. in Error; (New York)* Thompson, J. in delivering the opinion of the court, (pa. 109) says expressly, payment of the consideration money had always been held as a part performance.     Judge Reeve under the title, "Powers of Chancery," in his treatise on Dom. relations, has, after stating the conflicting decisions on this point, remarked in his pecular manner, "that if it be *no fraud* to receive anothers money on the footing of a parol agreement, and then to refuse the fulfilment of the agreement, then the cases in *Prec. in Ch. Eq. Ca. Ab. & Sch. & Lefroy,* are correct, if the governing principle of the interference of chancery was to prevent fraud; but if it be fraud so to do, then they are incorrect and the cases in *Vern.* 3 *Atk. & 4 Ves.* are correct, which proceed on the ground that the prevention of fraud was the reason why they were supposed not to be within the statute.     Jus. Washington, in the case of *Thomp-*

*son* vs. *Tod*, 1 *Peters. Cir. Ct. Rep.* 388, says, "although it should be admitted, that under all the circumstances of this case, payment of a part of the purchase-money will amount to a part performance, still it should appear beyond all reasonable doubt, that the payment was understood by the parties to have been so made and intended.

This opinion of Washington, J. accords with the principles as laid down in *Powel on Cont.;* and 1 *Bac. Ab.* 74, *tit. Agreement.* I will refer to what is said by Bacon upon the subject of part performance as it recognises essential principles and states the rule of evidence with respect to the payment of purchase-money. Under the title of Agreement, Bacon says—There are several cases, on which it has been held, that a parol agreement in part executed shall be performed in the whole; but as those cases are not exactly stated or well reported, it will be sufficient to mention what seems to be the sense of them, and what with any justness can be collected from them, that if an agreement be made concerning lands, though not in writing, and the party by whom it was made receives all or part of the money, equity will compel a specific performance of the whole agreement; because this is out of the statute, which designed to defeat such agreements only, no part whereof were carried into execution, and set up merely by parol; for that was the occasion of *frauds* and *perjuries*, that persons used to impose verbal agreements upon others, and by such false oaths charge the parties in equity to perform such agreements though they had never been made, and therefore the mere parol proof of such agreements concerning lands cannot be admitted in a court of equity; but where the price is paid, there it doth not stand upon the *parol proof* of the *agreement only*, but upon the *execution* of *part* of the agreement, which is evidence that *the agreement* was really made; and therefore there is the same reason that the plff. in equity should have the land for his money, as it is that he should deliver the goods where he has received the money; but the doubt in these cases is, what shall be a proof of the receipt of the money. Thus far it seems certain, that if the deft. in his answer, confesseth the receipt of the money for that purpose in the bill, or if he denies the money, and it be proved upon him by writing, as by letter under his hand, or *other written evidence*, he shall be obliged specifically to perform the whole agreement, because *he hath carried part* into *execution;* but if the deft. confesses the receipt of the money, but says that he borrowed it from the plff., and that he had it *not* in *execution* of *that agreement*, there he turns the proof of the agreement upon the plff. and *then* the plff. must prove the receipt of the money by the deft. for the purpose in the bill, by some written agreement, (note *b.*) for parol evidence as to the receipt of the money, seems to be as much excluded by the stat. as parol evidence relating to the agreement. From the investigation of the several cases, I came to the conclusion, that there may be cases, in which payment of the whole or part of the purchase-money will amount to performance of a parol contract concerning lands; and whenever the non-performance on the part of the vendor after receiving the purchase-money or a part thereof would put the party into a situation that is a fraud upon him, unless the agreement is performed, the court upon the principle of preventing fraud should de-

cree a specific performance; provided the terms af the agreement can be satisfactorily ascertained, that is, the agreement as set forth in the bill. The act relied on as part performance should be such as would not have been done independent of some contract or agreement relative to land; because as you are from the act performed to infer a contract, it must therefore be an act of that description, which will not admit any other inference. I would further remark, that the act must to a certain extent be a joint act, or such as clearly indicates mutual assent; thus entering into the possession of land as owner and with the consent of the vendor, has uniformly been considered and admitted to be part performance, and being evidence per se of an agreement for and concerning the land, the party seeking specific performance, is permitted, by parol, to prove the terms. This act of the vendee in entering upon the land and taking possession thereof as owner, with the assent of the vendor, is considered as in execution of an agreement and therefore a part performance; but acts which are only preparatory such as giving directions for conveyances, taking a view of the estate or putting a deed into the hands of a solicitor to prepare a conveyance, are not considered part performance. *Clerk* vs. *Wright*, 1 *Atk.* 12; 6 *Bro. Par. Ca.* 45; 3 *Bro. Ch. C.* 400; 1 *Mad.* 381. So likewise where there was a parol agreement for a compromise and a division of the estate by arbitration, acts done by the arbitrators towards the execution of their duty, such as surveying, &c. were not considered as acts of part performance, 6 *Ves.* 41. And where there was a parol agreement for the purchase of a lease, and that upon the plff. procuring a release of right from a stranger, the deft. would convey, and the plff. procured the release for a valuable consideration, this was held not to be a part performance entitling the party to a specific performance, 2 *Cox.* 271. These cases and particularly the last clearly evince the principle, which is essential to constitute an act, a part performance; the thing done must be, as before stated, in execution of the contract, and not as preparatory or as inducement. See *Gevins* vs. *Calder*, 2 *Des.* 190. Hence has arisen the difficulty with respect to the payment of money, not being such an act as of itself is conclusive, for it may have been made for a purpose different from that alledged and if the party paying can by parol prove the fact of payment and the object, then it is apparent the door is open to perjury and fraud, and the statute would be rendered useless and its provisions defeated. This has no doubt given rise to the opinion that payment of money either in part by way of earnest or in full for the purchase is not a part performance; if the fact is to be established by parol, then I should consider the opinion to be well founded, but if the fact of payment, is connected with the concurrent act of the vendor receiving and appropriating the money paid as purchase-money and this appears either by the deft. in his answer confessing the receipt of the money for that purpose as charged in the bill, or if denied it be proved upon him by writing, as by letter under his hand or other written evidence; or if the deft. confesses the receipt of the money, but says he borrowed it from plff. and had it not in execution of the agreement, then if the plff. prove the receipt of the money by the deft. for the purpose in the bill by some written agreement; in all

such cases and upon every principle it seems to me such a fact thus appearing would be conclusive evidence of an existing agreement of which it was part performance and which the deft. having carried part into execution should be compelled specifically to perform the whole.    In the case now under consideration, the complainant in his bill has charged the payments made on account of the purchase-money and in execution of the agreement set forth.    The deft. in his answer admits the receipt of the money, as an advancement, pending the treaty for sale, but denies that said advancements were a part performance of an agreement to sell and convey the said real estate or any part thereof to complainant, and also admits the two receipts.    As the answer here admits the receipt of the money and denies that it was in part performance, we must recur to the receipts of 10th March, 1832, and April 17th. 1832, which are admitted by the deft. and proved by the witnesses to be signed by him; these receipts unequivocally establish the fact of part payment to the amount of $1400, nearly one half the purchase-money as set forth by the complainant in his bill; the deft. has also admitted the proceedings in the orphans' court relative to the acceptance, and has not denied the matter stated by the complainant as to the inducement why he entered as surety in the recognizance.    The equity of the complainant as thus presented is strong and a case could not occur more in accordance with the rule as laid down by Bacon than that which appears from the two receipts.    The deft. by the first receipt dated March 10th, 1832, has not only acknowledged the receipt of $800, but also says "which is in part pay of the half of the mill property in Middleford which I promise to deed when called on."    The proceedings in the orphans' court of the same date show the property and the acceptance by the deft. fix the quantity; thus the subject matter of the parol contract and to which the receipts refer by name, as the mill property in Middleford, is ascertained; a moiety of which, the deft. by said receipt declared he had sold complainant; and by the acceptance, it is proved to be two-thirds of the residue of the Middleford property, which deft. accepted at the valuation of which a moiety or half part he sold to the complainant.    This is a question which *as it relates to* the terms of the contract will be hereafter considered and properly belongs to the second question to which I will now advert; and, under the circumstances of the case, being of opinion that the payments on account of the purchase-money made and proved as afsd. are such acts as amount to part performance, I will now take up the second question, viz. whether from the testimony in the case, the terms of the agreement set forth in the bill are clearly proved.

It being the settled rule of the court of chancery that where a contract relating to an interest in lands has been executed by one party, or carried partly into execution, it may be proved by parol evidence and specific performance decreed, in order that one side may not take advantage of the statute, to be guilty of fraud (1 *Ves.* 221, 297; 2 *Johns. Rep.* 221, 573, 587; 1 *Serg. & Rawl.* 80; 5 *Day* 16; *Parkhurst* vs. *Vancourtland,* 14 *Johns. Rep. on appeal* 15. And from the circumstances of this case as I was of opinion that the part payment of the purchase-money is a part performance of the contract set forth

in the bill, the next consideration was whether that contract was made out by clear and satisfactory proof. Upon this subject *Sugden* 86, remarks, It may happen that although an agreement be in part performed, yet the court may not be able to ascertain the terms, and then it seems the case will not be taken out of the statute. If however the terms be made out satisfactorily to the court, contrariety of evidence is not material *(1 Ves.* 221*)* and the court will use its utmost endeavors to get at the terms of the agreement. *(2 Ves.* 243; *2 Sch. & Lef.* 1; *5 Vin. Abr.* 523; *Pl.* 40; *Ib.* 522; *Pl.* 38; *6 Ves. jr.* 470; *3 Br. Ch.* 139; *1 Sch & Lef.* 22 *).* In *6 Ves.jr.*470, *Bordman* vs. *Mostyn,* Ld. Elden says; *perhaps* if it was res integra the soundest rule would be that if the party leaves it so uncertain, the agreement is not taken out of the stat. sufficiently to be enforced: but in *all* the cases in equity, the court has at least endeavored to collect if they could, what were the terms the parties have referred to. *Sugden on Vendors* 89, after stating the case lately decided by Lord Manners, and remarking that great reluctance had been manifested in carrying parol agreements into execution on the ground of part performance, where the terms do not distinctly appear, observes that notwithstanding the case decided by Lord Manners, there appears to be abundant authority to prove, that the mere circumstance of the terms not appearing, or being controverted by the parties, will not of itself, deter the court from taking the best measures to ascertain the real terms. And Sugden further remarks, that it can rarely happen that an agreement cannot be distinctly proved where the estate is absolutely sold: most of the cases on this head have arisen on leases, where the covenants. &c. are left open to future consideration. If from the testimony it is difficult to ascertain the terms of the agreement, the court to remove all doubts direct an issue. Hence in the case now before the court, if I am correct in the opinion I have expressed on the first point as to part performance, then it would be incumbent on the court to ascertain the terms of the contract, or if this could not be done to direct an issue as to such facts as may not be clearly proved or established. The only fact about which there can be a doubt in the present case, is the price. The subject matter of the contract and the quantity thereof sold, and for which the deft. promised to give a deed on demand, I consider settled beyond all controversy, by the receipts signed by deft. and bearing date March 10th 1832, and April 17th 1832; and their operation and extent fully and unequivocally ascertained when taken in connection with the proceedings relative to the acceptance of said real property by deft., in the orphans' court of Sussex county, and the testimony of Boyce and Elligood; the deft. having by the acceptance acquired a title to two thirds of the real estate of his father, Thomas Townsend, deceased, described as the mill property in Middleford; and by the receipts dated March 10th and April 17th 1832, deft. acknowledges to have received the sums mentioned, in the first receipt in part pay of the half of the mill property in Middleford, which he promised to deed when called on; by the second receipt he says in part pay of the one half of the Middleford property which *I have sold* him. Thus much appearing to the court by these receipts which are proved in the cause and not even denied, except evasively, as to their import, in the answer,

I shall proceed to the inquiry whether the testimony satisfactorily establishes what was the consideration agreed upon.

The complainant in his bill sets forth the consideration and alledges the same to be $3750, and then proceeds to state the manner in which it was agreed he was to pay the same to deft. The deft. in his answer denies that any sum ever had been in fact agreed upon. The answer thus positively denying the fact, unless the same is established, either by the testimony of two witnesses or of one corroborated by circumstances, the denial in the answer must be conclusive. As this is one of the essential terms of an agreement, and necessary to be ascertained, I will advert to the testimony. The first witness on the part of the complainant (the deft. not having taken any testimony) is that of Capt. Boyce, who in his deposition states, "that the deft. in the month of April or May, 1832, informed him he had sold half of the Middleford mills and property to complainant and purchased the schooner Tanner and scow from him for $625; price of real property not stated; that he could have got *more* for *said property* than he *had agreed* to let *Robert Houston* (complainant) *have it for.*" Now it does appear that although no price was stated, by the witness, yet his testimony proves two facts, viz. that the deft. had sold half of said property to the complainant and for a consideration agreed upon between the plff. and deft., because the defendant in stating to the witness that he had sold, had he said nothing more, would have afforded strong ground of presumption, but when he goes on to state, that he could have got more, for said property, than *he had agreed* to let Robert *Houston have it for*, he thereby, unequivocally refers to a fixed price, settled and agreed upon, between the parties; otherwise how could he with any propriety say, he could have got more for said property?

The admission of the deft. as proved by this witness, is therefore at variance with that part of his answer which denies that any price or sum or terms were agreed upon or fixed between compl't. and deft. for the purchase of the said real estate by the complainant; hence, unless the testimony of capt. Boyce is either sustained by another witness or corroborating circumstances, it cannot prevail, against the positive denial of the deft. which is made under oath. But it does further appear from the deposition of J. A. Elligood, that some time in the spring of 1833, at the time when complainant tendered the alledged balance of the purchase-money, that the deft. in presence of Elligood, in replying to what complainant stated, to be the contract or agreement, admitted, "that *he had heretofore agreed* to *convey* said property to *him*, for the *amount mentioned*, but that it would be unjust that he should convey for *that sum*, being *one half of the valuation-money.* From the testimony of these two witnesses, both unimpeached and not controverted, except by the denial in the answer, it does appear, that the parties had agreed upon the price or sum constituting the consideration, and from Elligood's the sum is ascertained to be half of the valuation and thus rendered certain, because id certum est quod certum reddi protest; and by referring to the record of the orphans' court which is in evidence in this cause, the one half of the valuation, appears to be the sum of $3750, as alledged in complainant's bill. In considering the testi-

mony in relation to this fact, of the sum or price not having been fixed or agreed upon by the parties the deposition of Noonan in connection with the answer at first view appeared to present some uncertainty whether the sum fixed or agreed upon was the half of the valuation, or half what the property cost deft., and whether under the term half what the property cost, could be included the half of other expenses relative to the procuring the act of assembly, &c. they being properly a charge against the fund generally. But the deposition of this witness has relation to declarations of Townsend as to what he intended to do and not like the others of what he had done. The subsequent information of Townsend's, that there was a misunderstanding between him and Houston, does not disclose the cause, only that it was about the purchase of the Middleford property. From the declarations of Houston to Noonan, it does appear that it related to the extra expenses which it appears were never adjusted although he seems to have been willing to pay his fair proportion. From the declarations and the occasion when they were made, both before Noonan and Elligood, I was induced to believe this difficulty about extra expenses originated after the deft. had refused to perform the agreement. I was led to this opinion by the import of deft.'s letter addressed to complainant, dated April 26th, 1832. In this letter the deft. attributes the interruption of the business to some unpleasant circumstance, which he was to communicate to the complainant when he should see him, and evidently attributes the non-compliance on his part to the interposition of some people, *"who he says made themselves very busy and who knew well when to stop it, &c."* If the real difficulty had been a misunderstanding about the extra expense, would it not have been disclosed in this letter of the 26th of April; why intimate that he was compelled to relate a circumstance that was very disagreeable to him; surely if the other had been the difficulty, it would have been stated with propriety, without occasioning any unpleasant feeling such as the letter implies, nor could such a matter be in any way referred to the interposition of other people. This letter of the 26th April, written a few days after Houston had paid the deft. $600, evidently discloses that the writer was by no means satisfied with the course he was then adopting. He had, by the money and credit of the complainant, after discharging the debts against his deceased father's estate, been enabled to accept the two-thirds thereof at the valuation reduced more than one half by the amount of incumbrances and debts paid off, and in the course of the proceeding as appears from the records of the orphans' court had the benefit of the complainant's credit as one of his sureties in the recognizance—a liability yet subsisting. From these circumstances appearing in the cause, it is evident the deft. availed himself of the full benefit of the agreement so far as the same had been performed by Houston and did not make known his determination not to comply with the same on his part until he had obtained all the advantage he expected to derive from it. Upon the ground therefore that under the circumstances of this case it would be a fraud upon the complainant, if a specific performance was refused, I was of opinion the complainant was entitled to relief, but before the same could be granted it was necessary to di-

rect an account of the rents and profits of the one half of the two thirds of the real estate for which the deft. by the receipt dated March 10th, 1832, promised to give to complainant a deed on demand—and as equity considers as done that which is agreed to be done, I regarded the right of the complainant to the one half of the two-thirds of the said real estate as a perfect and subsisting title in equity from the date of the aforesaid receipt; and that it carried with it the right to the rents and profits and entitled the deft. from that time to the balance of the purchase money with interest, subject to deductions for such payments as might be clearly proved to have been made; and which, when the rents and profits shall be accounted for under an interlocutory order, will be adjusted, and the balance due on account of the purchase money being thus ascertained, then the court will be able to make a final decree in the cause."

The court affirmed the interlocutory decree of the chancellor, with costs, adopting the general views presented by him in explanation of his decree.

Decree affirmed.

*J. A. Bayard and J. M. Clayton,* for appellant.
*Frame,* for appellee.