[PHILADELPHIA, JANUARY 18TH, 1841.]

§ PARKER *against* WELLS. ·

6wh153
182  596

APPEAL.

1. A parol contract, for the purchase of land, is not taken out of the statute of frauds by the mere payment of the purchase money.

2. A., tenant for years of land, made a parol agreement with his landlord, in the autumn of 1836, for the purchase of the land. Part of the purchase money was to be paid during the autumn, and the balance on the 1st of April, 1837; and A. was to continue in possession as tenant, and to pay rent until the 1st of April, 1837, when his lease expired. In December, 1836, no part of the purchase money having been paid, he gave the vendor his note for 90 days for the first instalment, which was discounted for the vendor; and on the 1st of April, 1837, A. paid this note and the balance of the purchase money, and received a conveyance. Afterwards the land was sold as the property of A. under a judgment obtained after the conveyance. *Held*, that a judgment creditor of A., whose judgment was obtained in January, 1837, was not entitled to be paid the amount of his judgment out of the proceeds of the sheriff's sale.

THIS was an appeal from a decree of the Court of Common Pleas of Delaware county, in the matter of the distribution of the proceeds of a sheriff's sale of a certain messuage and tract of land, situate in Upper Providence township, in that county, sold by virtue of. a writ of *venditioni exponas,* in an action brought by Samuel Parker against John Wells.

The sheriff paid into court the sum of $700, which was claimed

(Parker *v.* Wells.)

by two judgment creditors of the defendant; by Susanna Patterson, executrix, &c. of Wm. Patterson, deceased, under a judgment against the defendant, entered on the 23d of January, 1837; and by Charles Wells, under a judgment against the defendant, entered on the 19th of June, 1837.

The property, from the sale of which the money arose, was conveyed to the defendant by Paschall Morris and wife, by deed, dated the 1st of April, 1837.

There had been a parol agreement for the purchase and sale of the property between the parties in the previous autumn, which is thus detailed by the witness, Paschall Morris.

"As near as I can recollect, the contract for the sale of the property was made in the fall of 1836. A part of the money was to be paid that fall; the remainder in the following spring. The payment he was to have made in the fall, Mr. Wells did not make at the time agreed upon, I think. I endeavoured to see him several times after the payment was to have been made, but did not succeed until December, when he gave me his note in lieu of it. The balance was paid on the 1st of April, 1837, when the deed was made. The note was at ninety days, falling due about the time the remainder of the money was to be paid. Mr. Wells was in possession of the property as a renter in December, 1836. He rented the property of me. His lease expired April 1, 1837. He paid the note at maturity. I had the note discounted at bank a few days after it was given; on the 6th of January. It was for $1000. He did not pay the discount. Wells was to pay me $300 a year rent. He did not pay the rent in full up to April 1, 1837. He paid a portion of it; about $50, I took out of his store. He still owes the balance. By our agreement he was still to hold it of me as a renter until April 1, 1837. There were no writings between us until the deed was given. It was understood between us that the deed was not to be given until the money was all paid. I don't think I gave him any receipt for the note at the time. It was drawn payable at ninety days. It did not draw interest. It was in lieu of the payment he was to have made in the fall. The whole purchase money was $4,600. I had the note discounted in bank, and paid the discount; in the Bank of Chester County. The property was the property of my wife. We had several conversations about the sale of it in 1836; price fixed in the fall. I credited Wells with the $1000 as part of the purchase money. This is the same land sold under execution. According to the best of my recollection the note John Wells gave me was dated on the 31st of December, 1836, at ninety days, and fell due on the first of April, 1837. I made a memorandum of it in my book to

(Parker v. Wells.)

this effect. It was taken up by him on the same day that the deed was executed by me to him.

In consenting to take the note of John Wells in lieu of the money he was to have paid me in the fall, it was perfectly understood between us that I was not to make him a deed for the property unless the note was paid at maturity, as well as the balance of the purchase money."

After argument, the Court of Common Pleas (BELL, President,) delivered the following opinion.

" This is a contest between two of the judgment creditors of John Wells, under the following circumstances. In the fall of the year 1836, Paschal Morris made a *parol* agreement with John Wells, to sell and convey to him the tract afterwards sold by the sheriff under the above-mentioned executions, for the sum of four thousand six hundred dollars; one thousand of which was to be paid during that fall, and the balance on the first day of the next April, when the deed was to be executed and delivered. At the time of the agreement Wells was in possession of the property, as the tenant of Morris; and it was part of the contract, that he was to continue in possession as tenant until the said 1st of April. Wells failed to make the first payment, according to his engagement; but afterwards, on the 31st of December, in the same year, agreed to, and did give his note to Morris, at ninety days, for one thousand dollars, in lieu of the first payment, according to his engagement. A few days after, the note was discounted by one of the banks for Mr. Morris, who received and appropriated the proceeds. On the 1st of April, this note, then at maturity, was taken up by Wells, who, at the same time, paid the balance of the purchase-money, and received a conveyance in fee simple of the property in question from Morris and wife. During all this time Wells remained in possession. Pending these transactions, to wit, on the 23d of January, 1837, a judgment was entered in the Court of Common Pleas of Delaware County, by virtue of a bond with warrant of attorney, in favour of Susanna Patterson, executrix of William Patterson, deceased, against Wells, for the sum of five hundred dollars, with interest, with stay of execution for one year. On the 19th of June, 1837, a judgment was entered in the same court, on bond with warrant of attorney, in favour of Charles Wells, against John Wells, for the sum of four thousand dollars. It is by virtue of these judgments that the parties litigant before us respectively claim to have the money in court: and the simple question presented for decision is, whether, on the 23d of January, 1837, John Wells had any *estate* in the premises from the sale of which this money arises, as, according to law, was subject to the lien of Susanna Patterson's judgment. If he had, then the rule in her favour must be made absolute; but if not, Charles Wells is entitled to the money in dispute. The rule in Pennsylvania is,

(Parker *v.* Wells.)

that where there is an inception of title such.as a court of chancery would carry into effect, a judgment will bind the interest acquired under such title. The lien of a judgment has been extended in Pennsylvania, beyond the limits of the common law. With us, a judgment binds every kind of equitable, or even inchoate interest in land. It is a lien on every kind of right vested in the debtor at the time of the judgment; provided such right be of the nature of an estate ; and on a *venditioni exponas,* the sheriff may sell and convey such right, whatever it may be. *Carkhuff* v. *Anderson,* (3 *Binn.* 4.) *Morris* v. *Brenizer,* (2 *Rawle,* 188,) *cum multis aliis.* If the legal title is afterwards acquired, and the equity and the law thus united, the judgment attaches and binds the united interest. *Richter* v. *Selin,* (8 *Serg. & Rawle,* 440, 41.) So far has this doctrine of lien been carried, that in *Carkhuff* v. *Anderson,* it was held, that the mere right of pre-emption conferred on a Connecticut settler within the seventeen towns, by the act of the 4th of April, 1799, although depending on the contingency of the Pennsylvania claimants releasing to the commonwealth, was bound by the lien of a judgment. There the right of the settler was of the most imperfect and inchoate character, and yet the judgment was enforced against one to whom he had conveyed for a valuable consideration, and who subsequently perfected the title by purchasing a patent from the commonwealth. Such being the rule, the question recurs, had John Wells, at the time of the rendition of Susan Patterson's judgment, such an equitable estate as a chancellor would have enforced? If so, the subsequent acquisition of the legal title rendered the whole estate, legal and equitable, subject to the lien of that judgment. If the contract between Morris and Wells had rested in parol, without more, up to the 23d of January, 1837, it would have been within the statute of frauds, and consequently could not have operated to vest any interest in the land in Wells. There would then have been nothing upon which the judgment could attach, and the subsequent acquisition of title could not have removed the objection; because, although, our departure from the English law has by some jurists been objected to, it is the undoubted law of Pennsylvania, that a judgment does not bind after acquired lands. But, although a parol agreement for the sale of lands, of itself, cannot create even an inchoate inception of title, yet such an agreement, in part performed, by an unequivocal act, which from its nature, implies *some* agreement, will be specifically decreed in chancery, because it would be against equity to regard it as a nullity, and a fraud in the parties to refuse its completion. It is not necessary that the act relied on as part performance should indicate the nature and extent of the contract. As already observed, it is sufficient if it imply some agreement. *Jones* v. *Peterman,* (3 *Serg. & Rawle,* 548.) 1 *Fonb.* 185, *in notis.* The principle is, that whenever a parol agreement is begun to be put in execution, and intended to be carried out, equity will enforce

(Parker *v.* Wells.)

it. 2 *Eq. Cases Abr.* 48, in note to *pl.* 18. Thus delivery of, possession in pursuance of a parol contract, has uniformly been considered such a performance as to take the case out of the statute, (*Per* GIBSON, J. in *Jones* v. *Peterman*, 3 *Serg. & Rawle*, 548, and the cases there cited.) So, money laid out in improvements. *Powell on Contracts*, 296. *Wetmore* v. *White*, (2 *Caines's Cases*, 109.) In the present case I lay out of view the possession of John Wells at the time of, and subsequent to the contract, because such possession having been begun and continued under a lease, is equivocal, and does not imply an agreement of sale. But, was there not another act of the parties, executed in pursuance of this contract, and implying its existence? Did they not begin to put it in execution with intention to carry it out? That they did is undoubted from the fact that they subsequently completed it according to its very terms. Was the act alluded to such as in equity would be deemed a part performance? Some doubts, I know, have been expressed as to whether the mere payment of money constitutes part performance, and it has been decided that the payment of a sum in earnest of the agreement, is not such part performance, as prevents the operation of the statute. *Pingall* v. *Ross*, (2 *Eq. Cas. Abr.* 46, pl. 12.) *Simmons* v. *Cornelius*, (1 *Ch. Rep.* 128.) In *Smith* v. *Patton*, (1 *Serg. & Rawle*, 84,) it is said, " there may be some difference of opinion whether the payment of a very small part of the purchase money, unaccompanied by any other circumstance, be such a part performance, as would induce a court of chancery to decree a specific performance." But I think the weight of authority is in favour of the position, that where the whole, or a considerable part of the purchase money is paid in pursuance of the agreement, the vendee acquires an equitable interest in the land, which may be bound by a judgment; more especially, where the parties, as here, subsequently carry out and perfect the agreement. Thus, in *Lacon* v. *Martin*, (3 *Atk.* 4,) where only a part of the consideration money was paid, the agreement was specifically decreed, and Lord Ch. HARDWICKE lays it down as the rule of the court, that payment of consideration money has always been held as part performance; and in *Richter* v. *Selin*, (8 *Serg. & Rawle*, 441,) the late learned Judge DUNCAN evidently regarded the payment of an instalment on the purchase of an estate payable by instalments, as sufficient to create such an equitable interest as may be the subject of the lien of a judgment. It is true that in the present instance, Wells did not, as he had undertaken to do, pay any part of the purchase money, but it is in proof that after his failure to do so, a new agreement was entered into by the parties, by which Morris agreed to and did accept Wells's note, in lieu of the first payment and actually raised the money on it. The note was given and taken in pursuance of the second agreement, which the parties had a right to make, and was afterwards paid by Wells. This, in connection with the present

question, must be considered as tantamount with actual payment of money; as equally a part performance, and efficacious to take the case out of the statute.   Even if there had been no express change of the first agreement, it might well be doubted whether the giving and acceptance of the note to secure the payment of the first instalment, did not amount to part performance; for as was observed by the Chancellor in *Lacon* v. *Martin,* already cited, " as to taking notes of the purchaser instead of the money, the evidence being that they were given on account of the purchase money, will take off the face of the objection."

The argument founded on the alleged want of notice to Charles Wells of the existence of an equitable estate, has no application.   If this was a contest between John Wells, or one claiming under him, and a subsequent purchaser for a valuable consideration without notice, the question of notice might arise. But it is foreign to the dispute between the contending judgment creditors.   Neither John Wells nor Susanna Patterson was bound to give notice to Charles Wells of the existence of the equitable estate in January, 1837.   It was his duty to inform himself of existing circumstances, if his interests required he should be informed; and to facilitate the inquiry, the judgment creditor is only bound to revive the lien of his judgment in every period of five years by *scire facias.*

On the whole, therefore, I think that Susanna Patterson is entitled to take out of bank the amount claimed by her, being the principal sum called for by her judgment, and interest, wherefore the rule in her favour must be made absolute."

A decree having been made in conformity with this opinion, an appeal was taken to this court by Charles Wells; and the exception filed was, that the court below held the parol contract between Paschall Morris and John Wells to vest an equitable title in the said Wells, which was bound by Susanna Patterson's judgment.

Mr. *Dillingham* for the appellant.

1. The husband could not, without his wife's joining, and that according to prescribed forms, convey any title to her estate.   Of course he could not by his own mere act create an equitable title.

2. The agreement in this case, even if reduced to writing, would have vested no immediate estate in the land.   It was not a present conveyance of a future interest; nor an agreement for present conveyance of such interest; but a covenant to convey at a future time, upon the performance of certain conditions.   Such covenant amounts to but a chattel interest, and is personal, not real.   Until the time for performance arrived, and failure of Morris to comply, and tender by Wells, there could be no ground for the allegation of an equitable title in Wells.   There could have been no bill for specific performance in the meantime, and no decree for it: there

was nothing to perform. *Morris* v. *Brenizer*, (2 *Rawle*, 188,) shows that there must be something which the law calls estate, to be bound by a judgment. *Auwerter* v. *Matthiot*, (9 *Serg. & Rawle*,) *Lynch* v. *Dearth*, (2 *Penn. Rep.* 110,) *Syler* v. *Eckhart*, (1 *Binn.* 380,) *Richter* v. *Selin*, (8 *Serg. & Rawle*, 443, 444,) *Ely* v. *Beaumont*, (5 *Serg. & Rawle*, 126,) all prove that something more than a mere covenant is required, even in Pennsylvanian anomalies, to constitute an equitable title. This is not like the equitable titles under our land laws. *Sergeant on Land Law of Penn.* 150. Nor like the title of the Wyoming settlers. *Carkhuff* v. *Anderson*, (5 *Binn.* 8, 11.) Nor like any other equitable title recognised in our courts as bound by a judgment.

3. This agreement rested in parol; and there was no such parol performance as equity requires. It is not admitted that there was any second agreement here, such as the court below assumed in their reasons for the decree. Morris was not bound to make title before the money was actually paid, after the note was given, any more than before. The note was not in pursuance or performance of the contract. It did not draw interest. The discount of it was on Morris's own credit, and at his own expense. The mere giving it was no prejudice or loss to Wells, such as the payment of money would have been. Morris might have returned it at any time before the first of April, and have refused to convey. There was no receipt for it as on account of the contract. The positive fact is proved that it was not accepted as cash. Had it been otherwise, the authority of *Lacon* v. *Martin*, (3 *Atkyns*, 4,) on which the learned judge relied, does not support itself. The facts of that case, as reported, are directly the reverse of the hypothesis assumed by the chancellor: notes were not given in place of money, but notes were given for the money paid. If, however, the note it to be regarded as a payment in cash, of so much money on account of the contract, it is denied that any part payment of the consideration, alone and of itself, creates an equitable estate. If there can be an exception, this is not the one. It is not contended that the possession here was in performance of the contract of sale, or had any thing to do with it. Such an idea is contrary to the evidence, and was repudiated by the judge below. The point, how far payment of consideration money, alone, should be regarded as part performance to establish an equitable title was long a vexed question. Mr. Sudgen, in his first edition on Vendors, went for the affirmative. So was Roberts on Frauds; so thought Lord HARDWICKE, Lord ROSSLYN, Mr. Booth, and the profession generally. But the second edition of Mr. Sugden's book showed clearly that the point had not been carefully examined, and that these *dicta* were contradicted by the actual decisions, and by the reason of the case. *Sugden on Vendors*, 8th ed. 107, 108. 110. 117, 118, 123. 1 *Bridg. Eq. Dig.* 63; Agreement, 5. Part Performance. 2 *Story's Com. on Equity*, 64. *Phillips* v. *Thompson*, (1

*John. Ch. Rep.* 149, 150.) *Grant* v. *Naylor*, (4 *Cranch*, 234.) 7 *Cranch*, 171. 8 *Cranch*, 74. The courts of England and this country have long felt the necessity of taking a stand to prevent the statute of frauds from being frittered away. In the late case of *M'Kee* v. *Phillips*, (9 *Watts*, 85,) this point was expressly ruled: it is therefore unnecessary to go into an examination of the prior cases. But there is a point of view which renders this decision of great importance, which should be adverted to. It is analogous to our decisions under the recording act, which require, when a deed is not put upon record, that there should be either actual or constructive notice to a subsequent purchaser or mortgagee. As judgments here do not bind after-purchased lands, and the better opinion seems to be that judgment creditors are *not protected by the recording act, it was imperatively* called for that an overt act of unequivocal possession, should be essential to constitute an equitable title where the sale was by parol, that notice might be given to the world. This point was pressed below; and the establishment of it here will remove much cause for anxiety. The reasoning of the late Chief Justice Tilghman, in *Lessee of Billington* v. *Welsh*, (5 *Binn.* 131,) is directly in point. In *Goucher* v. *Martin*, (9 *Watts*, 109,) this court again recognises possession "in consequence and in pursuance of the contract," as an indispensable ingredient to create an equitable title where the sale is by parol. So far as regards parol contracts, a judgment creditor is now equally protected with the subsequent purchaser or mortgagee. In support of the position that the act of part performance must be to the prejudice of the party performing it, and such as would make it fraudulent in the other party not to comply, may be cited, besides the authorities already referred to, *Roberts on Frauds*, 138. *Lord Pengall* v. *Ross*, (2 *Eq. Ca. Ab.* 46.) *Gunter* v. *Halsey*, (*Ambler*, 586. 1 *Bridg. Eq. Dig.* 63, pl. 417.) *Frame* v. *Dawson*, (14 *Ves. Jr.* 386.) *Miller* v. *Howen*, (2 *Rawle*, 55, per Huston, J.) *Eckert* v. *Eckert*, (3 *Penn. Rep.* 362. per Kennedy, J.) *Wack* v. *Sorber*, (2 *Wharton's Rep.* 390, Judge Banks, affirmed.) *Hawkins* v. *Holmes*, (1 *Peere Wms.* 771.)

Mr. *Edwards* contra.

The question is not whether the court would have compelled specific execution of the agreement; but whether John Wells, at the date of our judgment, had not acquired such an interest in the land as to be according to the decision, bound by a judgment. The possession was accompanied by payment of the first instalment. The payment of the note referred to this agreement, and had the effect of continuing Wells in possession as vendee. 3 *Atkyns*, 4. 1 *Ves.* 231, 441. 3 *Ves.* 378. 1 *Fonbl. Eq.* 175, *note. Wetmore* v. *White*, (2 *Caines Cas.* 109.) *Richter* v. *Selin*, (8 *Serg. & Rawle*, 441.) *Rhodes* v. *Frick*, (6 *Watts*, 321.) *Kohl* v. *Harting*, (8 *Watts*, 331.)

(Parker v. Wells.)

The opinion of the court was delivered by

GIBSON, C. J.—It is not pretended that possession was delivered in execution of the contract; but it is argued that the security given for the purchase money was equivalent to actual payment of it, and consequently enough to take the case out of the statute. Though there had been several dicta that nothing but delivery of possession is to be taken for part performance, it had not been specifically decided in Pennsylvania before *M'Kee* v. *Phillips*, (9 *Watts*, 85,) that payment of purchase money is not so. Yet, notwithstanding several English decisions to the contrary, the opinion of the profession, drawn, perhaps, from some of the best text writers, had marshalled us the way to that conclusion. The English authorities are undoubtedly discrepant; but they justify what Mr. Justice STORY seems, in his *Equity Jurisprudence*, Ch. 18, § 760, to have feared would be considered a too positive assertion, that even in England the old doctrine has been finally overthrown. It is not a little singular that Mr. Roberts, when he wrote his treatise on the Statute of Frauds which was published so late as 1805, considered this old doctrine to be firmly established; and it is not less so that he mentioned *Pengall* ·v. *Ross*, (2 *Eq. Ca. Abr.* 46,) as the only case which militated against it; for many of the cases relied upon by Mr. Justice STORY and Sir Edward Sugden as establishing the contrary, were before that time; and they are corroborated by a multitude of dicta in later decisions. On the other hand, no American adjudication that I have discovered, contradicts them. Though Mr. Justice THOMPSON, while delivering the opinion of the court in *Wetmore* v. *Morton*, (2 *N. Y. Ca. in Error*, 109,) repeats, with seeming approbation, Lord HARDWICKE's dictum in *Lacon* v. *Merton*, (3 *Atk.* 4,) that payment of purchase money has always been deemed part performance; it is evident from the fact of payment, in that case, having been followed by possession and improvements, that he had not the question now before us particularly in his view; indeed, it belonged not to the case. Though the English statute of frauds has been adopted in practice, or re-enacted with modifications in almost every state of the union, it is wonderful how little is to be gleaned from the American decisions on this branch of it. On the facts of the case in *Davenport* v. *Mason*, (15 *Mass.* 93,) it is difficult to perceive how a question about part performance could be raised in it, as the money paid could certainly be recovered back without regard to the validity of the original contract; but there is no dictum in it in support of what I have called the old doctrine. *Bell* v. *Andrews*, (4 *Dall.* 152,) was an action to recover damages for a breach of the contract, which is not forbidden by our statute; and no more was determined in it than that payment of the consideration might be proved by parol. In the Lessee of *Billington* v. *Welsh*, (5 *Binney*, 130,) it was barely ruled that delivery of possession, and payment of purchase money together,

(Parker *v.* Wells.)

were enough to take the contract out of the statute, without a word having been said about the supposed effect of payment alone. In *Jones* v. *Peterman,* (3 *Serg. & Rawle,* 543,) which was the case of a lease, and not a case of payment at all, the question had regard exclusively to the effect of possession at the time of the contract. It is true that the chief justice, as he had done in *Smith* v. *Patton's lessee,* (1 *Serg. & Rawle,* 84,) mentioned the old distinction between purchase money and earnest, but in a way to leave it doubtful whether he considered either of them to be available. He glanced at the doctrine as it appeared on the surface of the subject; but without a view to the present question, for it was not his habit to decide more than was in the case. The judge who was associated with him proceeded less cautiously, and maintained delivery of possession to be the criterion. It may be said, then, that before the decision of *M'Kee* v. *Phillips,* the question in Pennsylvania was an open one, but swayed towards the conclusion of the puisne judge in *Jones* v. *Peterman,* by a preponderating weight of authority, and by the opinions of such men as Chancellor Kent, Mr. Justice Story, Sir Edward Sugden, and Mr. Newland. But independently of authority, there is much reason to distinguish betwixt evidence of payment, and evidence of the more notorious and solemn act of investiture which is less susceptible of perjury, against which the statute was intended to guard. And there is even more reason for a strict construction of the statute of Pennsylvania, which denies not the injured party an action for damages, than there is for such a construction of the British statute, which declares the contract void, and allows him no remedy whatever. But, in the case before us, the purchase money was not even paid: for though the giving of a negotiable security be equivalent to actual payment, in order to found an action for money paid or received, it is not so to found an equity ; as may be seen in its insufficiency to constitute a purchaser for valuable consideration without notice. The purchaser here might, perhaps, have recovered his money back; but on no ground could actual payment, and much less could a security for it, give him an equitable estate in the soil. The judgment recovered of him before the land was conveyed to him, was consequently not a lien on it; and the fund in court must be decreed to the next oldest judgment creditor who is the opposing claimant.

Decree accordingly.