# Hill *et al. versus* Meyers.

*Parol Sale of Land by Tenant in Common to his Co-Tenant invalid.— Evidence of Sale, in Ejectment by one claiming as Sheriff's Vendee of the Interest of the alleged Purchaser.—Depositions when admissible without Proof of Notice of Time and Place of taking.*

1. A tenant in common in possession cannot sell by parol to his co-tenant in possession so as to pass title.

2. Where a plaintiff in ejectment alleged that the share of one tenant in common was bought by his co-tenant in possession by parol before the entry of a judgment against the latter on which his interest had been levied and sold by the sheriff to the plaintiff; he may show that there had been a contract of sale and that the purchase-money had been paid, though if proven these facts are not alone sufficient to warrant a recovery.

3. But evidence that D. was present at the sheriff's sale of the interest of S. in the land and gave no notice that it did not all belong to S., is not admissible, because it neither tended to prove the contract of sale by one of the tenants in common to the other, nor performance, and it did not estop D. from asserting his title, which was on record, against the purchaser.

[Hill *et al. v.* Meyers.]

4. It was not competent for the plaintiff to prove that at and before the sheriff's sale, the price and value of real estate in the county wherein the property in question was situated had become greatly depreciated: the evidence was immaterial to the issue.

5. Testimony of the declarations of S. at and before the sheriff's sale of his interest when D. was not present, *held* not admissible to affect D.'s interest.

6. Where a deposition was taken in 1830, and had twice been read in former trials of the same controversy without objection, it was error to reject it because there was no proof of notice of the time and place of taking it: but where the subject-matter of the deposition was unimportant, its rejection would not alone be cause for new trial.

ERROR to the Common Pleas of *Adams county.*

This was an action of ejectment, brought by Henry Meyers against Johnston Hill and Elizabeth his wife, Harriet Witherow, Joseph Witherow, John S. Witherow, Washington Witherow, and Sarah Witherow, for the undivided moiety of a tract of land in Cumberland township, Adams county, containing one hundred and fifty acres, more or less, with a grist-mill, saw-mill, and other improvements.

The defendants were the heirs and legal representatives of David Witherow, deceased. The plaintiff was the sheriff's vendee of the interest of Samuel Witherow, who was a brother of David, and held the property with him as tenant in common, and who, it was alleged, had purchased the interest of David prior to the entry of the judgment.

On the trial of the case there were several bills of exception to the admission and rejection of testimony, sealed by the parties, and the charge of the court below also was excepted to by plaintiff and defendants.

All the material facts of the case, and the points made by the counsel, will be found in the opinion of this court.

The case was argued by *David Mills* and *Daniel W. Smyser* for defendants in error.

The opinion of the court was delivered, June 26th 1862, by

STRONG, J.—This was an ejectment for an undivided moiety of a tract of land in Cumberland township, containing one hundred and fifty acres, more or less, and having certain improvements thereon. In 1812, the entire ownership of the land was vested in Samuel Witherow and David Witherow, and it was in their joint possession. In 1821 a judgment was recovered against Samuel, and by virtue of executions issued thereon, his interest in the land was sold November 10th 1823, to Peter Epley, under whom the plaintiff below claims. It is not controverted that under that sale the purchaser acquired the undivided half of the land that had belonged to Samuel Witherow. This ejectment is not brought for that half. The plaintiff seeks to recover the other moiety, of which David Witherow was the owner, alleging

[Hill *et al. v.* Meyers.]

that it had become the property of Samuel before the judgment was obtained against him. His case is, that on or about the 3d of May 1814, David Witherow made a parol contract of sale to his brother, Samuel Witherow, and that some time afterwards he removed from the property, leaving Samuel in possession, and that a part if not all the purchase-money was paid before 1821, when the judgment was recovered against Samuel. The bargain between the brothers was relinquished in 1822, but the plaintiff contends that prior to that time Samuel had acquired an equitable interest in David's half, under the parol contract, an interest upon which the judgment was a lien. There was no direct evidence of the amount of the consideration which Samuel was to pay. It was however inferrable, from a deed prepared by a scrivener, but never delivered, Samuel never having complied with the conditions of the parol agreement. In the court below the case was made to turn mainly upon the question whether the consideration for the parol agreement to sell had been paid in whole or in part, previously to the judgment recovered against Samuel, or to the levy under the execution issued upon the judgment. It seems to have been assumed that if the consideration was paid, the purchaser had acquired an interest in the land, and most of the exceptions to the charge of the court as well as to the admission or rejection of evidence involve a consideration of the correctness of this assumption.

Clearly, if there be nothing more than the payment of the purchase-money, a purchaser acquires no title, either legal or equitable, under a parol contract. The Statute of Frauds is in his way. It is true, equity holds that if a parol contract for the sale of land be so far executed that it would work a fraud to rescind it, that is, if what has been done under it is incapable of being compensated at law, an equitable title passes notwithstanding the statute. But payment of the purchase-money may be compensated. It may be recovered back with interest. Accordingly it has been often held that payment of the purchase-money alone will not take a parol purchase out of the statute. This was more than intimated in Wither's Appeal, 14 S. & R. 185, and it was directly decided in McKee *v.* Philips, 9 Watts 85, in Parker *v.* Wells, 6 Whar. 153, and in Gangwer *v.* Fry, 5 Harris 491. To take a case out of the statute, and to give the purchaser more than a tenancy at will, there must be a delivery of possession *under the parol contract.* The purpose of the statute was to prevent secret frauds, and the temptations to perjury, which are presented where title may be maintained by oral testimony. Hence a writing signed by the parties is required, and even courts of equity, though dispensing with the form, sternly demand the substance. There must be, at least, the publicity which attends an open transfer of the possession. An unequivocal and substantial change of the occupancy must be a part of

[Hill *et al. v.* Meyers.]

the evidence of the contract: a fact itself attesting that the parties have bargained, and therefore the possession must be delivered *under* the parol agreement. So much, at least, is fully sustained by the authorities. Without referring to the great multitude which our reports contain, a citation of two or three will suffice: Haslet *v.* Haslet, 6 Watts 464: Gangwer *v.* Fry, 5 Harris 491; Robertson *v.* Robertson, 9 Watts 42, and Woods *v.* Farmane, 10 Watts 195. If the purchaser under a parol agreement was in possession when the agreement was made, his continued possession will not avail him. It is no equivalent for the writing which the statute demands: Jones *v.* Peterman, 3 S. & R. 543; Eckert *v.* Eckert, 3 Penna. 332; Aitkin *v.* Young, 2 Jones 15. Thus a tenant in possession cannot buy from his landlord by parol agreement, for, being already in possession, there can be no such notoriety to a delivery, as equity will regard a substitute for a written contract: Greenlee *v.* Greenlee, 10 Harris 225. It cannot be overlooked that the tendency of modern decision has been to return to the plain reading of the statute. Experience has shown that the departures which courts of equity at first sanctioned have brought back all the evils which it was the purpose of the Statute of Frauds to remedy. They have caused the title to land, which in all civilized communities has been regarded of the first importance, to be dependent upon the frail recollection of witnesses, stimulated and perverted by the apparent hardships of a particular case, a case which could never have arisen had the mandate of the legislature been obeyed. In view of these results of the course of equitable decision, this court has been constrained to hold that even possession taken under and in pursuance of a parol contract does not of course give the purchaser an equitable title. Even in such a case, it may work no fraud to rescind the contract or to treat it as null. It may still admit of compensation. Thus, in Dougan *v.* Blocher, it was said by Mr. Justice Woodward that "possession, to be part performance, must be taken under and in pursuance of the contract, and it must be maintained as it is taken; and unless accompanied by such improvements and arrangements as will not reasonably admit of compensation in damages, is not, even when so taken and maintained, such part performance of a parol contract as will take it out of the Statute of Frauds." So, in Moore *v.* Small, 7 Harris 467, it was said, "without possession taken and maintained under the contract there can be no pretence of part performance, but generally that is an act which admits of compensation, and therefore too much is made of it when it is treated as sufficient ground for decreeing specific performance."

But without applying to this case the more stringent and rational doctrine laid down in Moore *v.* Small, and in Dougan *v.*

Blocher, as well as in Postlethwaite *v.* Frease, 7 Casey 472, how can a tenant in common in possession sell by parol contract to his co-tenant in joint possession with him, so as to pass title? Receipt of the purchase-money will not do, as has been seen. That may be compensated, and the measure of compensation is certain. And that possession cannot be delivered under the contract and in pursuance of it, which is evidence of an actual transfer, equal to what is furnished by a written contract. The co-tenant is already in possession. No visible change is possible. If a tenant cannot buy from his landlord without yielding up his possession, and entering anew under the parol contract, much more, it would seem, cannot a tenant in common buy by parol from his co-tenant in joint possession. In such a case there can be no possible equivalent for a written contract, and this we understand to be the settled law. It was so declared in Workman *v.* Guthrie, 5 Casey 495, where it was laid down that there can be no valid parol sale among tenants in common in possession, as there can be no such part performance by delivery of possession as will take the case out of the Statute of Frauds. The language of the court in that case was as follows: "What then, it is asked, can there be no sale of land by parol among tenants in common where all are in possession? Certainly not; because the Statute of Frauds and Perjuries forbids it, and there cannot be such part performance as would take it out of the operation of that wise and salutary rule of titles: Galbraith *v.* Galbraith, 5 Watts 149. Several of the cases cited in the paper-book show that for the same reason a tenant in possession cannot purchase the reversion of his landlord by parol. Whilst possession in pursuance of a parol contract is not of itself such part performance as necessarily to take it out of the statute, it is an indispensable accompaniment of every parol contract that hopes for specific execution; and when the contracting parties already maintain such relations as to preclude the possibility of surrendering and taking possession, under, in pursuance, and by reason of the contract, they must fall back on the easy and reasonable rule of the statute, and put their contract in writing, signed by the parties."

To apply these established principles to the case now before us, the parol sale of David Witherow to his brother Samuel conveyed no title either in law or in equity, for both the parties were rightfully in possession as tenants in common. It was impossible, therefore, for possession to be delivered under the contract, and the attempted sale could not have been so notorious and unmistakably evidenced as it would have been by a written contract. The possession of Samuel Witherow remained after the contract as it was before. There was no change except that some time after the alleged sale David went to reside on

[Hill *et al. v.* Meyers.]

another place. The learned and careful judge of the court below fell into error, therefore, when he instructed the jury that whether Samuel Witherow had acquired any interest or not depended upon the answer to the question, whether the whole or any part of the purchase-money had been paid before the entry of the judgment against him, or the making of the levy on which the property had been sold to Peter Epley. The same error is visible in that portion of the charge which asserted that Samuel and David Witherow could not rescind their parol contract after a lien had been attached to the interest of Samuel, *acquired by his paying a part or the whole of the consideration.* So also that part of the charge to which the tenth assignment of error takes exception is equally faulty. All these instructions are based upon the inadmissible assumption that Samuel Witherow· acquired an interest in the land by the payment of the consideration-money, stipulated for in the verbal contract, and they overlook the fact that the contract was in parol, and that no such possession could have been taken under it as to amount to that part performance which, in the judgment of a court of equity, would make a refusal to execute the contract a fraud.

In this aspect of the case the exceptions taken to the admission and rejection of evidence are comparatively unimportant, for it seems impossible for the plaintiff to recover. Still we will not pass them unnoticed. It was competent for him to show, if he could, that the purchase-money had been paid, though that alone was not sufficient. So it was admissible to prove there had been a contract to sell. Each of these things were steps in the attempt to make out a title. But we cannot perceive how the evidence, admitted under the first bill of exceptions, tended to prove either. The plaintiff was permitted to give evidence to show that David Witherow and Peter Epley were at a sheriff's sale in August 1823, when the land was sold as the property of Samuel to Solomon F. Linn, and that there was no notice by any one that the property did not all belong to Samuel. That there was nothing in all this to estop David from asserting his legal right and individual moiety was ruled in Hill *v.* Epley, 7 Casey 331. And it would seem to be a very far-fetched and unwarranted inference to draw from his having given no notice at the sale, that David Witherow had sold to his brother, or that he had been paid for his interest in the land. We think it was too remote for the purpose for which it was attempted to be used, and especially so in a case in which the plaintiff sought to recover in the face of the Statute of Frauds.

Nor was it legitimate to prove that between 1812 and 1823, when Peter Epley bought, the price and value of real estate in Adams county became greatly depreciated. It neither tended to establish any fact material to the plaintiff's case nor to weaken

[Hill *et al. v.* Meyers.]

any part of the case of the defendant. It was the introduction of an impertinent issue, which in cases of this kind is always hurtful. Evidence is not admissible to excite prejudices in the minds of a jury, or merely to allay those which it is supposed they may possibly entertain. The authorities cited on behalf of the plaintiff in error to sustain this exception, show satisfactorily that the evidence should not have been received.

The third assignment relates to the admission of the testimony of Peter Keefauver, detailing declarations of Samuel Witherow in 1822 or 1823, when David was not present. What Samuel said at his first interview with the witness was clearly inadmissible, standing by itself, and it is not perceived how illegal evidence becomes legal when introduced to render other evidence intelligible.

We would not reverse this judgment for the rejection of the deposition of James Nicholls, though it should have been received. It was taken in 1830, and it had been twice read without objection on former trials of the same controversy. After this, and at this late day, the time has gone by for an objection that there is no proof of notice of the time and place of taking it. There is no force in the objection that the deposition is in the handwriting of the witness. Had it been proved that the testimony had been reduced to writing by the witness before he was sworn, there would have been difficulty in the way of its reception. Then it would have been governed by the principle asserted in McEntire *v.* Henderson, 1 Barr 402. We may add that there is no proof that Nicholls was the attorney of David Witherow in the action of ejectment in which the deposition was taken. Nor was this advanced as one of the reasons assigned for objecting to its admission. The defendant below was therefore entitled to have it read. But its rejection would not justify us in setting aside the verdict, for the subject-matter of the testimony was of no importance.

Judgment reversed, and a *venire de novo* awarded.